**Ruben CASTANEDA,
Plaintiff-Appellant,**

v.

**UNITED STATES DEPARTMENT OF
AGRICULTURE, Does I–X, inclusive,
et al., Defendants-Appellees.**

**No. 85–5765.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 1, 1986.

Decided Jan. 9, 1987.

Gary Nelson, Law Office of Gary Nelson, San Diego, Cal., for plaintiff-appellant.

John J. Robinson, Asst. U.S. Atty., San Diego, Cal., for defendants-appellees.

Before WALLACE, NORRIS, and BRUNETTI, Circuit Judges.

NORRIS, Circuit Judge:

In November 1982, plaintiff Castaneda was the manager of Circle K convenience store No. 203 in El Centro, California. At that time an agent of the United States Department of Agriculture (USDA) investigated Castaneda's participation in the federal food stamp program. When the investigator allegedly used food stamps to purchase beer and other ineligible items from Castaneda, the USDA initiated proceedings to disqualify store No. 203 from participation in the program. Circle K subsequently terminated Castaneda's employment, allegedly because of his unlawful redemption of food stamps.

Castaneda brought suit in federal court against the USDA and various Doe defendants representing unknown USDA officials and investigators, alleging in part[1] that the government's decision to terminate his store's right to participate in the food stamp program for one year without providing him advance notice and an opportunity to be heard deprived him of due process under the Fifth Amendment. The district court dismissed his action for failure to state a claim upon which relief could be granted. Castaneda timely appealed.[2]

We reject Castaneda's contention that the government's termination of his store's participation in the food stamp program without providing him with advance notice and an opportunity to be heard violated his due process rights.[3] Castaneda had no direct relationship with the government. Rather, the government dealt directly with the Circle K store, and Castaneda complains of the indirect adverse consequences he suffered as a result of the government-store interaction. In *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), the Supreme Court faced a similar situation where government action adversely affected the plaintiff only indirectly, and the Court found a "simple distinction between government action that directly affects a citizen's legal rights, or imposes a direct restraint on his liberty, and action that is directed against a third party and affects the citizen only indirectly or incidentally...." *Id.* at 788, 100 S.Ct. at 2476–77. In *O'Bannon*, patients of a nursing home asserted a due process right to notice and a hearing before the government could decide to disqualify the nursing home from continuing to receive Medicaid and Medicare payments to cover its patients' bills. The Court held that the patients had no statutory right to receive public funding for residing in nursing homes which were determined to be unqualified; instead, the patients simply enjoyed indirect benefits from the government's regulatory relationship with their nursing home. Termination of those benefits granted directly to the nursing home thus did not deprive the patients of any "enforceable expectation of continued benefits." *Id.* at 786, 100 S.Ct. at 2476. While

---

1. Castaneda's other allegations are not pertinent to this appeal.

2. An earlier order dismissing the complaint was not a final appealable order because it did not dismiss the action. *See Hoohuli v. Arivoshi*, 741 F.2d 1169, 1171 n. 1 (9th Cir.1984) (absent extraordinary circumstances order dismissing complaint but not dismissing action is not appealable). In contrast, the district court's March 22, 1985 order dismissing Castaneda's action in its entirety is a final order appealable under 28 U.S.C. § 1291. His appeal is timely because the notice of appeal was filed within thirty days of this order. Fed.R.App.P. 4(a).

We review the district court's dismissal for failure to state a claim *de novo*. *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552 (9th Cir.1984).

3. Because we affirm the dismissal of Castaneda's action on the merits, we need not resolve the dispute between the parties as to whether the doctrine of sovereign immunity bars his action against the USDA. We must reach the merits because sovereign immunity plainly does not bar his action against individual USDA agents under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

the government had to provide the nursing home with the opportunity to be heard concerning its disqualification from the program, it was not constitutionally required to provide the same opportunity to the patients.

Similarly, Castaneda was only an indirect beneficiary of the government's statutory relationship with The Circle K Corporation allowing it to participate in the food stamp program. We agree with the USDA that its order prohibits the "retail food store" and its owner/operator, not employee Castaneda individually, from accepting food stamps, *see United States v. Smith*, 572 F.2d 1089, 1095 (5th Cir.1978), and hence Castaneda is not a direct target of the government's disqualification decision. Moreover, he as an individual enjoys no legally cognizable interest in working for a store which can accept food stamps, nor does he claim that he has a property interest enforceable against the government in maintaining his private employment with The Circle K Corporation. He thus cannot satisfy the "stigma-plus" standard for direct injury established in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (defamation alone is insufficient to work a due process violation absent accompanying loss of government employment or change in legal status under state law). Instead, he is simply the indirect "victim" of the government's decision to terminate Circle K's statutory benefits and hence is in the same position as the nursing home patients in *O'Bannon;* unlike the store for which he worked, he has no due process right to be heard before the store is temporarily disqualified from program participation. He thus fails to state a claim upon which relief could be granted.[4]

AFFIRMED.

4. *O'Bannon* explicitly left open the possibility that where the government indirectly yet intentionally injures or affects the legal status of a person by action taken directly against a private third party, the injured person can maintain a due process challenge against the government. *See* 447 U.S. at 789–90 n. 22, 100 S.Ct. at 2477 n. 22 ("[I]f the Government were acting against one person for the purpose of punishing or restraining another, the indirectly affected individual might have a constitutional right to some sort of hearing."). Here, however, Castaneda has not alleged that in issuing its order the USDA intended to injure him personally by getting him fired. He alleges only that he lost his job as a result of the order.